I hope to reserve two minutes for rebuttal of my 10 minutes. This case presents the interesting situation where both the government and Mr. Leung are asking you to approve one ruling of Judge Ilston and reject another, although we obviously disagree about which one you should sustain and which one you should reject. The government attacks Judge Ilston's ruling that she would reach the merits of the juror misconduct issue before you rather than procedurally default the defendant on his new trial motion. The Judge Ilston was entitled to reach the merits in this case and it made eminent good for an extension under Rule 33 to file their new trial motions. Judge Ilston was empowered then to provide them with as much time as she so chose. I've had complex new trial motion proceedings after a jury verdict that have gone on for a year before they've been resolved. She extended the, put the sentencing date out in March, said that she hoped to try and resolve the new trial motions before then. The sentence date was extended to April 24th. Judge Ilston was obviously unhappy that counsel had not gotten the new trial motion on for hearing until the projected sentencing date, but she was entitled under Rule 33 and Rule 45 to hear that motion even if she thought it was untimely, if she thought there was excusable neglect involved, and she chose to hear it. And let's face reality. If she had denied the new trial motion, it could have been brought back to her again under Rule 2255. If this Court were to rule the new trial motion untimely, a 2255 would still be timely. So it made good sense to reach the merits she did, she was entitled to, and this Court should do the same. I have a question regarding the reason for you taking so long with the affidavit. You mention in your brief that there was some excusable neglect that led up to the April affidavit, but I, it's referenced to something that I don't see in the docket. Well, the, the affidavit was not obtained from juror Sims until April 13th, I believe. I didn't brief this below, but I believe that the defendants referred to that before Judge Ilston and said that they simply hadn't been able to get back and get the affidavit signed until that time. Okay. So regardless, then, how are you getting around Warger? I know in the letter that you mentioned regarding the case, you said that the distinction is, is that it's before, it's, it's after Voydier, but before deliberations. So how, how is the timing of that at all helpful to you based upon the new opinion? Well, you, you referenced the Warger case, Your Honor, and Warger, and I quote, the question presented in this case is whether Rule 606B precludes a party seeking a new trial from using one juror's affidavit of what another juror said in deliberations to demonstrate the other juror's dishonesty during Voydier. We would agree that Warger makes clear that you can't claim that a juror is lying based on what they've said in deliberations, but Warger never addresses the question here, which is whether you can raise a challenge to a juror's veracity during a Voydier based on pre-deliberation statements, and we would submit that this Court, this Ninth the challenge to the juror's honesty in Voydier is based on pre-deliberation statements. In that case, it was racist statements made with other jurors in carpooling, that those are outside the purview of Rule 606. But Warger says directly it simply applies during an inquiry into the validity of the verdict during a proceeding in which the verdict may be rendered invalid. So it's really not giving you the timing of either Voydier, deliberations, pre-deliberations, et cetera. It's just saying proceeding challenging the verdict. Well, Your Honor, I would submit that Warger is solely based on the rather clear language of 606, which says you can't consider things said during deliberations. And that's not the issue here. As Henley said, 606 is concerned with the sanctity of deliberations. If you look at Tanner, the whole legislative history of 606 was concerned with the sanctity of deliberations. And here we're talking about statements that were made prior to deliberations. Let's say we had a situation in which a member of the 49ers is accused of un-a-services for taking bribes to tank in a game. The Court is very careful in Voydier and makes sure that there's nobody on that jury who's a football fan. During the course of the trial, one juror reveals to others that he's an inveterate Raiders fan, he hates the 49ers, and he never misses a Raiders game. That doesn't come out until after a verdict because the defense can't talk to jurors during the course of the trial. There's nothing about the policy of 606 that should preclude a judge from taking into consideration that this juror blatantly lied to him or her, and when the lie was revealed in a context which had nothing to do with jury deliberations. So the question is, is this really a blatant lie? She says, I'll follow your instructions. And then she doesn't, but at the moment in time when she says, I'll follow your instructions, she's not doing anything like, for example, in Worger where she concealed the lawsuit or her daughter's involvement in the car accident, right? Well, Your Honor, I submit to you that what you've just discussed is a factual complex that only can be resolved by an evidentiary hearing. Was she lying or was she not? I've been in these contexts where somebody in a State case, where somebody says something during voir dire that is inconsistent with what they do during deliberations. The State rule is different. And at the evidentiary hearing, the trial judge made the finding that this was a deliberate lie. Until he was able to see the veracity of the affiance, he wasn't able to determine that as a factual matter. So it's – whether it was a deliberate lie – if there was an evidentiary hearing here, we are not claiming that as a matter of law on this affidavit. Judge Ilston should have granted a new trial. What we're saying is that the affidavit was competent to establish a factual complex which had to be investigated at an evidentiary hearing. If I – I just have a minute or two left. Let me just say this about Tanner. If you read Tanner in five or six different sections, it makes clear that the thrust of the opinion is not when you can consider allegations of misconduct, when they're revealed. It's the nature of the misconduct involved in that case. What it says in that case is intoxication goes to juror competency. And that's just off base. It doesn't matter who establishes it. That is not the kind of incompetency, like failing to listen to jury instructions, that will support a new trial motion. It makes clear that there are situations in which – well, the point that I really wanted to make about it is simply this. At the end of that case, it describes the protections against juror bias and unfairness. And in the last paragraph, it says that one of the critical ones is voir dire, that it is voir dire that allows a party to assure that Petitioner's Sixth Amendment interest in an unpaired jury, on the other hand, are protected by several aspects of the trial process. The suitability of an individual for the responsibility of jury service, of course, is examined during voir dire. So voir dire is a protection that allows 606 to function as it does, because you still have voir dire to protect against unfair jurors. But if jurors can mislead a court during voir dire, and there can't be any mechanism to discover that by the court afterwards, even through statements outside the deliberation process, then the protection of voir dire is essentially eviscerated. I've got about a minute left, and I'll reserve that. Roberts. Thank you, Your Honor. And may it please the Court, I'm Adam Chandler, here for the United States. This is not a case of juror bias, this is not a case of dishonesty during voir dire, and this is not a case about extraneous influences on the jury, because all that remains in this long-running case is a single sheet of paper, a juror's belated allegation that other jurors engaged in premature discussion of the evidence that was presented and admitted at trial. That is not enough to remand, first and foremost, because a federal rule of evidence is directly on point. Rule 606B bars exactly the kind of evidence that the defendant seeks to introduce here. Its application is reinforced by countless court decisions, including voir dire from the U.S. Supreme Court just two months ago. Moreover, no court has ever held that Rule 606B would allow a court, after the verdict, to consider juror evidence of misconduct that occurred during the trial. This Court and many others have applied Rule 606B to block evidence of mid-trial conduct in a wide variety of scenarios, including reading magazines during trial, sleeping during trial, drinking alcohol and lots of alcohol during trial, using cocaine and smoking marijuana during trial, making up their minds prematurely, and is here discussing the evidence prematurely. Do you think Warger has any definition that is limiting its ruling to the timing of the information? Because he's talking about it being, of course, before deliberations as the statement. And then I assume, I guess you have to assume that that would influence deliberations with some extraneous belief that they would bring the jurors around. Is that right? Well, to answer your question, no, Your Honor. I don't think the fact that the statements at issue in Warger occurred during deliberations played any role in the Court's reasoning whatsoever. When the Court states its holding, which you just read on pages 3 and 4 of the slip opinion, it makes no reference to the fact that the statements occurred during deliberations. It is true that the factual scenario of Warger is that the statements occurred during deliberations, but that's just one of the three settings that are laid out in Rule 606B. So that's why there are references in the opinion to that, but nothing about the reasoning of Warger turned on that fact. May I ask you about the Seventh Circuit case in Farmer where there the court said that 606 doesn't automatically bar a situation where a jury had been discussing it and made up their minds before they got into deliberation. If we take your position, would that be a split with the Seventh Circuit? No, Your Honor. The Farmer decision did draw a distinction and say perhaps the fact that these discussions took place may technically be admissible under Rule 606B, but certainly any implication of the fact of that discussion would not be. And so if there were some way to, you know what does that mean? Well, it means perhaps Practical matter in a post-trial motion. Yes. So perhaps if you heavily redacted the Sims affidavit and had an evidentiary hearing on that, that evidentiary hearing would take place in order to figure out what prejudice came from the fact of those discussions, and seeking that prejudice at the evidentiary hearing is precisely the kind of inquiry that is blocked by Rule 606B. And I think that's the point that Farmer makes. And Farmer also observes that the conduct that took place here, you know, while not necessarily proper, is also somewhat understandable for jurors in a new situation, in a new institution. The court said it was virtually impossible to imagine that human beings in the scenario would not at least think about the evidence as they were hearing it, and that some jurors would succumb to discussing it early. But the judge certainly told them frequently not to, right? That's right. I mean, each recess, it wasn't a situation where she instructed once. She instructed regularly throughout the trial, don't do that. That's absolutely right, Your Honor. I counted 42 instances, perhaps there's more. And crucially, before she sent the jury to deliberate, she said anew in the jury instructions, you need to look at all the evidence and go into the room with an open mind. So what would happen if the affidavit instead said, I heard these people talking and I actually heard Mrs. So-and-so say, you know, I don't need to deliberate, I know what happened, I made up my mind. Would that change anything? Well, if that evidence had come to light prior to deliberations, then Judge Ilsen could have held some sort of, you know, caucus with the jurors and other jurors that they were talking to in order to suss out, you know, how big of a problem is this? Do I need to re-instruct? How can I correct this? In fact, something like that exactly happened in this trial. A juror had heard a radio story on a related civil settlement and the judge brought the juror in and another juror that that juror had spoken to found out the depth of any prejudice. It turned out there were none and they, she gave a corrective instruction and sent the jurors back to the jury. So another, but the distinction you're drawing is, well, if somehow the other juror had had the presence of mind to tell the judge earlier, it might have had a remedy. But the fact that it didn't come out until after means sorry, basically? Rule 606b says sorry, basically. And the Supreme Court, in Tanner, said there are other ways of getting at this after a verdict has come down. Court personnel can observe the jurors and can testify. They are not bound by Rule 606b. It's only about juror testimony. But also, voir dire exists to try to maintain, correct for this problem. The jurors observe each other during the trial and can report it early. So there are a lot of ways of getting at this, but Rule 606b has struck the balance at if it's after the verdict and it's a juror testifying, it is barred. Precisely to protect the privacy of what happens in the jury process, to promote the finality of these judgments, and to, you know, reduce any incentive there is to harass jurors after a verdict has come down. So no matter how outrageous the conduct, if you were in a continuum, and maybe you put this one in the middle, but something is totally outrageous in terms of what happens in the jury room, no remedy, conviction. Well, Your Honor, I think the Supreme Court And we didn't have a court employee who wasn't able to observe this. Well, the Supreme Court in voir dire had a footnote, footnote 3, in which they say there could be cases of bias that are so extreme that a fair trial is inhibited almost by definition. That was not one of those cases. This is certainly not one of those cases. So that you're talking about basically fundamental due process situation? That's right, Your Honor. But Tanner made clear that in general, Rule 606b is not unconstitutional. There was a Sixth Amendment challenge to it in that case.  And the court was satisfied that there was no constitutional problem. So Rule 606b has consistently been understood to block evidence of things that happened prior to deliberations, including dishonesty during voir dire, as Warder makes clear. And so I think putting together Warder and Tanner, that pair of cases really does foreclose all the arguments that the defendant has advanced here based on the Sims Declaration and the scope of Rule 606b. There was also a reference earlier to Henley that I was going to bring up. There is a line of cases in this circuit starting with Hard, and Henley relied on Hard, and Hyatt in 2013 relied on Henley. And that string of cases does rely on a point of law that essentially evidence of dishonesty during voir dire is admissible despite Rule 606b. Warder, I think, now makes clear that that, at least rule of law, is no longer good law. It wasn't operative and decisive in each of those cases, but at least that statement that each of them relied on is no longer good. And that's clear because when the Supreme Court describes the circuit split on the issue it was deciding, it cited Hard directly, which is the progenitor of this line of cases. If there are no further questions, I will yield the balance of my time. Thank you, counsel. Thank you, Your Honors. Three quick points, Your Honor or Your Honors. Warder is absolutely clear that the only provision that is considering part of 606 is that which deals with juror deliberations. I quote, As enacted, Rule 606b prohibited the use of any evidence of juror deliberations subject only to the expressed exceptions for extraneous information and outside influences. So Warder has nothing to do with the use of evidence concerning pre-deliberation statements. It does overrule Hard to the extent that Hard would rely on statements during jury deliberations. But Henley remains good law in this circuit for the proposition, and I quote from Henley, Rule 606b's primary purpose, the insulation of jurors' private deliberations from post-verdict scrutiny would not be implicated by permitting juror testimony about what O'Reilly allegedly said while carpooling with other jurors. Final point, let me change my hypothetical. It's during trial, a juror comes to the trial court and says, look, Your Honor, it turns out that there are six members of the jury who are Raiders fans and have said that they are diehard opponents of the 49ers. Any court then would declare a mistrial. It would just say, if six people misled me on Warder, mistrial. Well, that's not actually what the law sets out, right? I mean, let's go back to my lovely circuit where we indict governors every few years, and in the Governor Ryan trial, they spent about 10 days of Wardering and interviewing the jurors because the distinction here is the judge had the opportunity to be informed of the potential lies made during Warder or the potential biases expressed during the course of this very long three-month trial. And so then they knocked off certain jury, jurors, and they re-sat other jurors. So that's the big distinction, right? But in my hypothetical, the judge finds out before verdict and he says, I got to he or she, I got to declare a mistrial. Five or six people misled me during Warder. This is an unfair trial. But the government's position is that if the judge finds that out afterwards and he learns not of anything during deliberations, but that prior to deliberations these five or six people admitted this bias, a bias that he knows would have caused him to mistry the case, he can't do anything about it now because of Rule 606. And Rule 606 has nothing to do and in no way addresses pre-deliberation statements. Unless you can invoke the footnote. Right. Footnote 3. Oh, right. Footnote 3. That is the government's position. You may have described the case. Thank you, Your Honor. Thank you. Thank you all for your arguments. The case is here to be submitted for decision. We'll be in recess until 2 o'clock.
judges: Kendall, Thomas, McKeown